# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF KENTUCKY
# PADUCAH DIVISION

**THOMAS EDWARD BURKE** *et al.*                                    **PLAINTIFFS**

**v.**                                         **CIVIL ACTION NO. 5:15CV-P156-TBR**

**LADONNA THOMPSON** *et al.*                                      **DEFENDANTS**

## MEMORANDUM OPINION

Two Kentucky State Penitentiary (KSP) prisoners, Thomas Edward Burke, Jr., and Jeremy Todd West, who are proceeding without the assistance of counsel, filed a complaint pursuant to 42 U.S.C. § 1983 (DN 1) and an amendment (DN 11) thereto. This matter is before the Court on initial screening of the complaint and its amendment pursuant to 28 U.S.C. § 1915A. For the reasons that follow, the Court will dismiss the action.

## I. SUMMARY OF CLAIMS

Plaintiffs bring this action against the following nineteen Defendants in their individual and official capacities: (1) LaDonna Thompson, former Commissioner of the Kentucky Department of Corrections (KDOC); (2) Randy White, KSP Warden; (3) Joel Dunlap, KSP Deputy Warden of Security; (4) Skyla Grief, KSP Warden of Programs; (5) James Beavers, KSP Internal Affairs Officer; (6) Timothy White, KSP Kitchen Supervisor; (7) Josh Patton, KSP Unit Administrator I; (8) Timothy Lane, KSP Unit Administrator II; (9) Justin Hughes, KSP Classification and Treatment Officer and member of "Cert Team"; (10) Micah Melton, KSP "CTO/cert team member"; (11) Amy Fisher, KSP "CTO"; (12) Adam Noel, KSP "CTO" and Grievance Committee member; (13) Dan Smith, KSP Grievance Coordinator; (14) Lt. Morris; (15) Kevin Winfrey, KSP Kitchen Supervisor; (16) KSP; (17) Aramark Food Service, employer of Defendants Kitchen Supervisors White and Winfrey; (18) KDOC; and (19) James L. Erwin,

KDOC Deputy Commissioner, Adult Institutions. Plaintiffs allege retaliation, deliberate indifference in violation of the Eighth Amendment, and violations of due process under the Fourteenth Amendment.

According to the complaint, Plaintiffs were kitchen workers at KSP. On January 20, 2015, non-Defendant Lt. Hines called Plaintiffs to the yard office, where they were handcuffed. Plaintiffs told staff that their personal property was still in the kitchen. Plaintiffs were placed in segregation – Plaintiff West was taken to "3 cellhouse," and Plaintiff Burke was taken to "7 cellhouse that is supermax."

Two days later, on January 22, 2015, Defendant Beavers met with Plaintiff West to investigate the situation. At this meeting, Plaintiff West found out that he was placed in segregation because he "was accused of planning an action against [Defendant] Kevin Winfrey of Aramark." Plaintiff West told Defendant Beavers that he had no reason to take action against Defendant Winfrey and that "he and Kevin may not agree on some things but it was not severe enough to bring harm to the man." Defendant Beavers advised Plaintiff West that if Plaintiff Burke's statements were similar to Plaintiff West's, then they would both be released soon. Three days later on January 25, 2015, both Plaintiffs were released from segregation.

On January 26, 2015, Plaintiff West filed a theft report and a grievance regarding his missing property. Plaintiffs claim that Defendant Morris violated Plaintiff West's grievance process resulting in KSP denying him a reimbursement. Also on January 26th, both Plaintiffs filed a grievance "because they were being denied their jobs after being cleared of any wrong doing's." Defendant Grievance Coordinator Smith rejected the grievance claiming it was a non-grievable issue as it was a classification issue. Plaintiffs report, "[w]e lost our seniority and pay,

along with Burke's program completion, because [Defendant] Tim White would not listen to reason" and hire them back in the kitchen.

At a classification hearing on February 2, 2015, Defendant Patton told Plaintiffs that he was giving them seven days to find a job; that they were not being listed as "'unassigned'"; and that they would not be given back their kitchen jobs "based on 'Security issues.'" Plaintiffs report that on February 6, 2015, Plaintiff West was assigned a "'Yard Runners' position" that paid $0.80 per day and that Plaintiff Burke was placed "into 'Yard Detail'" at the same pay rate. Plaintiffs claim that Defendant Patton "put [them] in those positions. His reasoning for doing so, was to keep us off unassigned."

Plaintiffs filed a classification appeal to Defendant Grief, arguing that they "are not a security risk due to the facts that [Defendant] Lt. Beavers cleared our situation of any wrong doings." They claim that on March 3, 2015, Defendant Grief concurred with the decision of the classification committee "because we were reassigned forceably to jobs that we never requested."

Plaintiffs report that they "started putting in for higher paying jobs, but we were not accepted to any of them. Only then did we find out we were put into a 90 day lock from [Defendant] Tim Lane and debated the issue to [Defendant] Josh Patton about being denied higher paying jobs."

Plaintiffs also sent a letter to Defendant Beavers requesting a copy of his facts and findings of his investigation but received no response. They also sent a letter to Defendant Grief, disagreeing with her concurrence with the classification committee, debating the 90-day lockdown and denial of their job requests, and arguing that Defendant Timothy White, an Aramark employee, was "overstepping his bounds as a contractor." Defendant Grief did not

respond to their letter. On March 23, 2015, Plaintiffs "wrote a mass request" to Defendants Dunlap, Grief, and Beavers and non-Defendant Rodgers for a meeting with Plaintiffs and Aramark Defendants Timothy White and Winfrey, but Plaintiffs never received a response.

On April 24, 2015, Defendant Grief told Plaintiffs that they "could put in for the kitchen again since we waited out her time frame." Plaintiffs report that they started submitting applications to the kitchen but were not hired back. On May 1, 2015, Plaintiffs talked to Defendant Winfrey, who told Plaintiff Burke that he could talk to Defendant Timothy White about returning to the kitchen. Defendant Winfrey told Plaintiff West, however, that his return was questionable due to "past issues of disagreement" over Plaintiff West's illness in January and sick days. On May 4, 2015, Plaintiffs approached Defendant Timothy White about their prior kitchen jobs, and Defendant White said that he was withholding their jobs due to lack of clarification from Defendant Beavers regarding his investigation. Plaintiffs submitted a request to Defendant Beavers for his investigation report, and Defendant Beavers told them that he could not submit a written response without Defendant Warden Randy White's approval.

On May 12, 2015, Plaintiffs again submitted kitchen applications. Later that day Defendant Timothy White told them that he refused to hire either of them and that he will not hire Plaintiff West back because of a past disagreement. Defendant Timothy White did not indicate why Plaintiff Burke's position was being denied and said that Plaintiffs "can 'apply' all we want, but I won't hire you or Burke till I see fit to do so!"

Plaintiffs report that they talked to Defendant Noel in the presence of Defendant Melton and that Defendant Noel referred them to Defendants Patton and Grief, who Plaintiffs advised they already dealt with. Plaintiffs wrote to Defendant Warden Randy White on May 26, 2015, but received no response. On June 2, 2015, Plaintiffs talked to Defendant Dunlap about

4

Defendant Timothy White. Defendant Dunlap then went to talk to Defendant Timothy White. When Defendant Dunlap returned, he stated, "'I'm done talking!'" and asked Plaintiffs where they are from. Plaintiffs state, "We assume that Joel Dunlap is attempting to have us transfered after asking about Tim Whites actions." Plaintiffs then wrote Defendant former Commissioner Thompson about their issues and to prevent their transfer.

In the amendment (DN 11), Plaintiffs report that the letter that they sent to Defendant former Commissioner Thompson was responded to by Defendant Deputy Commissioner Erwin. They claim that Defendant Erwin advised them that their "job placements are only handled no higher than the institutional Warden, and it would be forwarded to Warden Randy White." They further claim that Defendant Erwin "inadvertently states that by having 2 or more inmates sign that I [Plaintiff West] can be punished by D.O.C. for 'involvement in the writing, circulation, or signing of petitions which may lead to disruptions of institutional operations.'" Plaintiff West asserts that he had to include Plaintiff Burke in his letter because "the situation involves both of us from the start."

As relief, Plaintiffs seek compensatory and punitive damages, declaratory relief, and injunctive relief in the form of ordering Defendants Timothy White and Dunlap "to stop your 'deliberate indifference and retaliation' of our Jobs and any Transfers to any other prisons, for retaliation in filing of this complaint before this court. Or any other harrassment from all defendants named herein the complaint!!"

## II. **LEGAL STANDARD**

Because Plaintiffs are prisoners seeking relief against governmental entities, officers, and/or employees, this Court must review the instant action under 28 U.S.C. § 1915A. Under

§ 1915A, the trial court must review the complaint and dismiss the complaint, or any portion of the complaint, if the court determines that it is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. *See* § 1915A(b)(1), (2); *McGore v. Wrigglesworth*, 114 F.3d 601, 604 (6th Cir. 1997), *overruled on other grounds by Jones v. Bock*, 549 U.S. 199 (2007).

A claim is legally frivolous when it lacks an arguable basis either in law or in fact. *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). The trial court may, therefore, dismiss a claim as frivolous where it is based on an indisputably meritless legal theory or where the factual contentions are clearly baseless. *Id.* at 327.

In order to survive dismissal for failure to state a claim, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "[A] district court must (1) view the complaint in the light most favorable to the plaintiff and (2) take all well-pleaded factual allegations as true." *Tackett v. M & G Polymers, USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009) (citing *Gunasekera v. Irwin*, 551 F.3d 461, 466 (6th Cir. 2009) (citations omitted)). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555, 557).

## III. ANALYSIS

"Section 1983 creates no substantive rights, but merely provides remedies for deprivations of rights established elsewhere." *Flint ex rel. Flint v. Ky. Dep't of Corr.*, 270 F.3d 340, 351 (6th Cir. 2001). Two elements are required to state a claim under § 1983. *Gomez v. Toledo*, 446 U.S. 635, 640 (1980). "[A] plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). "Absent either element, a section 1983 claim will not lie." *Christy v. Randlett*, 932 F.2d 502, 504 (6th Cir. 1991).

### A. Claims Against KDOC and KSP and Official-Capacity Claims for Damages Against KDOC and KSP Employees

The Eleventh Amendment[1] "bars all suits, whether for injunctive, declaratory or monetary relief, against the state and its departments," *Thiokol Corp. v. Dep't of Treasury, State of Mich., Revenue Div.*, 987 F.2d 376, 381 (6th Cir. 1993), unless Congress has validly abrogated the state's immunity or the state has waived its immunity. *Nev. Dep't of Human Res. v. Hibbs*, 538 U.S. 721, 726 (2003); *Alabama v. Pugh*, 438 U.S. 78l, 782 (1978). The Commonwealth of Kentucky has not waived its immunity, *see Adams v. Morris*, 90 F. App'x 856, 857 (6th Cir. 2004), and in enacting § 1983, Congress did not intend to override the traditional sovereign immunity of the states. *Whittington v. Milby*, 928 F.2d 188, 193-94 (6th Cir. 1991) (citing *Quern*

---

[1] The Eleventh Amendment to the United States Constitution provides, "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. "Although the amendment does not address the possibility of suit against a state by one of its own citizens, unassailable case law has interpreted the amendment in such a way as to close that gap." *Barton v. Summers*, 293 F.3d 944, 948 (6th Cir. 2002) (citing *Hans v. Louisiana*, 134 U.S. 1 (1890)).

*v. Jordan*, 440 U.S. 332, 341 (1979)). The Eleventh Amendment, therefore, bars this § 1983 action against KDOC and KSP.

"This [Eleventh Amendment] bar remains in effect when State officials are sued for damages in their official capacity." *Kentucky v. Graham*, 473 U.S. 159, 169 (1985). Consequently, the official-capacity claims for damages against all Defendants who are KDOC and KSP employees are barred by the Eleventh Amendment.

In addition, "neither a State nor its officials acting in their official capacities are 'persons' under § 1983." *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989).

Thus, the claims against KDOC and KSP and the official-capacity claims for damages against Defendants Thompson, Randy White, Dunlap, Grief, Beavers, Patton, Lane, Hughes, Melton, Fisher, Noel, Smith, Morris, and Erwin are barred by the Eleventh Amendment and fail to state a claim upon which relief may be granted.

### B. Claims Against Aramark and Official-Capacity Claims Against Timothy White and Winfrey

The official-capacity claims against Defendants Aramark employees Timothy White and Winfrey are actually against their employer, Aramark.[2] *See, e.g.*, *Griffin v. S. Health Partners, Inc.*, No. 1:12CV-P174-M, 2013 WL 530841, at *5 (W.D. Ky. Feb. 11, 2013). A private corporation, like Aramark, "is not liable under § 1983 for torts committed by its employees when such liability is predicated solely upon a theory of respondeat superior." *Austin v. Paramount*

---

[2] Aramark apparently contracted with the State to provide food services to Kentucky State Penitentiary inmates. In the Sixth Circuit, "it is clear that a private entity which contracts with the state to perform a traditional state function such as providing medical services to prison inmates may be sued under § 1983 as one acting under color of state law." *Hicks v. Frey,* 992 F.2d 1450, 1458 (6th Cir.1993). Accordingly, for the purposes of initial review, the Court presumes that Aramark and its employees are state actors. *See also McCullum v. City of Philadelphia*, No. 98-5858, 1999 WL 493696, at *3 (E.D. Pa. July 13, 1999) ("Plaintiff has sufficiently alleged facts which show Aramark was acting under color of state law for purposes of § 1983. . . . [P]roviding food service, like medical care, to [ ] incarcerated people is one part of the government function of incarceration.").

8

*Parks, Inc.*, 195 F.3d 715, 728 (4th Cir. 1999). Rather, like a municipality, a private corporation is liable under § 1983 only when an official policy or custom of the corporation causes the alleged deprivation of federal rights. *See Street v. Corr. Corp. of Am.*, 102 F.3d 810, 818 (6th Cir. 1996) ("*Monell* involved a municipal corporation, but every circuit to consider the issue has extended the holding to private corporations as well."). To demonstrate municipal liability, a plaintiff "must (1) identify the municipal policy or custom, (2) connect the policy to the municipality, and (3) show that his particular injury was incurred due to execution of that policy." *Alkire v. Irving*, 330 F.3d 802, 815 (6th Cir. 2003).

In the instant case, Plaintiffs do not identify any Aramark policy or custom that caused any alleged harm. The complaint, therefore, fails to establish a basis of liability against Aramark. Consequently, the claims against Aramark and the official-capacity claims against Defendants Timothy White and Winfrey will be dismissed for failure to state a claim.

*C. Retaliation*

Plaintiffs mention retaliation in the relief section of their complaint when they seek an injunction "to stop your 'deliberate indifference and retaliation' of our Jobs and any Transfers to any other prisons, for retaliation in filing of this complaint before this court. Or any other harrassment from all defendants named herein the complaint!!"

Retaliation for the exercise of a constitutional right is itself a violation of the Constitution actionable under § 1983. *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc).

> A retaliation claim essentially entails three elements: (1) the plaintiff engaged in protected conduct; (2) an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) there is a causal connection between elements one and two—that is, the adverse action was motivated at least in part by the plaintiff's protected conduct.

*Id.*

9

Plaintiffs do not allege facts in the complaint or amended complaint supporting a retaliation claim. While filing a lawsuit is protected conduct, Plaintiffs had not yet filed their complaint when they requested not to be transferred nor do they allege that they told anyone that they were going to file a lawsuit. Further, a transfer is usually not an adverse action, *see Siggers-El v. Barlow*, 412 F.3d 693, 701 (6th Cir. 2005) ("Since prisoners are expected to endure more than the average citizen, and since transfers are common among prisons, ordinarily a transfer would not deter a prisoner of ordinary firmness from continuing to engage in protected conduct."), and Plaintiffs are claiming only a speculative fear of a transfer. They do not allege that a transfer has been ordered; they merely "assume that Joel Dunlap is attempting to have us transferred" because Defendant Dunlap asked where they were from. It is unclear what Plaintiffs mean in seeking stopping retaliation "of our Jobs." Nevertheless, the complaint indicates that they lost their jobs and were being refused rehiring *before* filing the lawsuit; thus, there is no causal connection between the two elements. Finally, Plaintiffs' request to stop the harassment is a non-specific, conclusory request devoid of facts. For these reasons, Plaintiffs fail to allege that any adverse action has been taken against them that has been motivated by any protected conduct and fail to state a retaliation claim.

### D. Deliberate Indifference

"Extreme deprivations are required to make out a conditions-of-confinement claim" under the Eighth Amendment. *Hudson v. McMillian*, 503 U.S. 1, 9 (1992). "Not every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey v. Wilson*, 832 F.2d 950, 955 (6th Cir. 1987). An Eighth Amendment claim has both an objective and subjective component: (1) a sufficiently grave deprivation of a basic human need; and (2) a sufficiently culpable state of

10

mind. *Wilson v. Seiter*, 501 U.S. 294, 298 (1991). "[P]rison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care, and must 'take reasonable measures to guarantee the safety of the inmates.'" *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (quoting *Hudson v. Palmer*, 468 U.S. 517, 526-27 (1984)). "Because placement in segregation is a routine discomfort that is a part of the penalty that criminal offenders pay for their offenses against society, it is insufficient to support an Eighth Amendment Claim." *Harden-Bey v. Rutter*, 524 F.3d 789, 795 (6th Cir. 2008).

Plaintiffs have alleged no facts even suggesting that they have been denied any basic human needs, and therefore, they fail to state an Eighth Amendment claim upon which relief may be granted.

### E. Due Process

Plaintiffs' claim that they lost their kitchen prison jobs and were not rehired; were placed in segregation for five days; and had grievances interfered with and rejected. Plaintiff West alleges that he lost property when he was taken to segregation, and Plaintiff Burke alleges that he was unable to complete some sort of program. Plaintiffs fail to state a due process violation.

"[A] prisoner does not have a constitutional right to prison employment or a particular prison job." *Martin v. O'Brien*, 207 F. App'x 587, 590 (6th Cir. 2006) (citing *Newsom v. Norris*, 888 F.2d 371, 374 (6th Cir. 1989)); *see also Anderson v. Hascall*, 566 F. Supp. 1492, 1494 (D.C. Minn. 1983) ("It is beyond dispute that the Constitution itself does not create a protectable interest in the retention of a prison job."). "Prisoners have no constitutional right to rehabilitation, education, or jobs." *See Argue v. Hofmeyer*, 80 F. App'x 427, 429 (6th Cir. 2003). Further, prisoners have no inherent constitutional right to placement in any particular prison, security classification, or housing assignment. *See Olim v. Wakinekona*, 461 U.S. 238, 245

11

(1983); *Meachum v. Fano*, 427 U.S. 215, 225 (1976). Additionally, any complaint regarding the grievance procedure does not state a constitutional claim. *See LaFlame v. Montgomery Cty. Sheriff's Dep't*, No. 00-5646, 2001 WL 111636, at *2 (6th Cir. Jan. 31, 2001) (holding that inmate "cannot premise a § 1983 claim on allegations that the jail's grievance procedure was inadequate because there is no inherent constitutional right to an effective prison grievance procedure") (citing *Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1996)); *Spencer v. Moore*, 638 F. Supp. 315, 316 (E.D. Mo. 1986) (holding that if the prison provides a grievance process, violations of its procedures do not rise to the level of a federal constitutional right). Plaintiffs, therefore, have not shown a liberty interest arising under the Due Process Clause itself.

However, "a liberty interest in avoiding particular conditions of confinement may arise from state policies or regulations, subject to the important limitations set forth in *Sandin v. Conner*, 515 U.S. 472 (1995)." *Wilkinson v. Austin*, 545 U.S. 209, 222 (2005). In *Sandin*,

> [The Court] recognize[d] that States may under certain circumstances create liberty interests which are protected by the Due Process Clause. But these interests will generally be limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.

*Sandin*, 515 U.S. at 483-84. Here, Plaintiffs fail to allege conditions imposing any atypical and significant hardship on them in relation to the ordinary incidents of prison life. *See, e.g.*, *Cook v. Hills*, 3 F. App'x 393, 394 (6th Cir. 2001) ("[P]laintiff cannot show a denial of due process regarding his placement in segregation because a prisoner enjoys no liberty interest in remaining free from disciplinary segregation absent an atypical and significant hardship . . . .").

Plaintiffs, therefore, fail to state a Fourteenth Amendment due process claim.

## IV. **CONCLUSION**

For all the foregoing reasons, the instant action will be dismissed by separate Order.

Date:


cc: Plaintiffs, *pro se*
 Defendants
 General Counsel, Justice & Public Safety Cabinet, Office of Legal Counsel
4413.005